# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **DONALD WAYNE JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:05-0127** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

The Plaintiff, Donald W. Jones (hereinafter referred to as "Claimant"), filed an application for SSI and DIB on November 27, 2001 (protective filing date), alleging disability as of February 1, 1998, due to pain and swelling in his legs, knees, back, hands, and neck and depression. (Tr. at 57-59, 375-76, 590-603.) The claims were denied initially and upon reconsideration. (Tr. at 31-36, 39-41, 377-86.) On August 9, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 42.) The hearing was held on March 25, 2003, before the Honorable Charles R. Boyer. (Tr. at 584-628.) By decision dated May 20, 2003, the ALJ determined that Claimant was not

entitled to benefits. (Tr. at 17-27.) The ALJ's decision became the final decision of the Commissioner on December 20, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On February 16, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2004).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

     In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffered from severe impairments, but did not identify the specific impairments. (Tr. at 22.) The ALJ specifically found, however, that Claimant did not have a severe mental impairment. (Tr. at 22-23.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23.) The ALJ then found that Claimant had a residual functional capacity for unskilled work, which involves the performance of simple, repetitive mental work tasks, at the sedentary level which does not involve lifting more than ten pounds. (Tr. at 24.) The ALJ found that Claimant was unable to return to his past relevant work because the tasks required a greater level of exertion than his current residual function capacity provides. (Tr. at 25.) The ALJ found that Claimant was not disabled using Medical-Vocational Rule 201.21 of the Medical-Vocational Guidelines ("the grids") as a framework for decision. (Tr. at 25-27.) The ALJ thus concluded that there were jobs existing in significant numbers in the regional and national economies which Claimant could perform. (Tr. at 26.) On this basis, benefits were denied. (Tr. at 26-27.)

Scope of Review

     The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 14, 1954, and was 48 years old at the time of the administrative hearing. (Tr. at 18, 57, 375, 587.) Claimant has a tenth grade education and a Generalized Equivalency Diploma. (Tr. at 588.) In the past, he worked as a construction laborer and brick mason. (Tr. at 18.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant had no nonexertional impairments and relied upon

4

the grids, without obtaining testimony from a vocational expert. Claimant argues that the ALJ did not take into account his alleged nonexertional impairments. Specifically, Claimant avers that as a result of Claimant's diagnoses of severe medial joint space narrowing with degenerative changes and severe tricompartmental degenerative changes in the left knee, which resulted in knee replacement surgery, he has difficulties climbing steps, bending, and stooping, is unable to squat, and experiences equilibrium and balance problems. Concerning his diagnosis by nerve conduction study of polyneuropathy of sensorimotor variety with superimposed bilateral carpal tunnel syndrome, Claimant avers that he experiences stiffness, swelling, and numbness, which impacts his use of a writing instrument. Furthermore, MRI exams revealed advanced spondylitic changes with severe central and bilateral foraminal stenosis and midline disc protrusion, which Claimant alleges limits his ability to bend, stoop, and engage in prolonged sitting, standing, and walking. Finally, Claimant avers that he was diagnosed with depression which impacts his interaction with others, concentration, and sleep. The Commissioner asserts that Claimant's argument is without merit.

As previously noted, the ALJ found that Claimant had the Residual Functional Capacity ("RFC") to perform unskilled work that involves the performance of simple, repetitive work tasks. (Tr. at 24.) Without specifying which impairments were severe, the ALJ found that Claimant had "impairments that impose more than a minimal impact on his functional capabilities and are 'severe' under the standard set forth in Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984)." (Tr. at 22.)  He found that Claimant's mental impairments, including depression, were non-severe. (Tr. at 22.) Based upon a totality of the evidence regarding Claimant's depression, the ALJ found that Claimant had no more than "mild limitations in any area of functioning due to a mental impairment." (Tr. at 22.) The ALJ noted that while Claimant may have experienced "some situational depression related to his medical condition and financial concerns, the record reflects that he is responding adequately to

5

treatment." (Tr. at 23.) The ALJ found that Claimant's mood, affect, and his ability to rest and relax, had improved since he was prescribed antidepressant medications. (Tr. at 22.) The ALJ further noted that Claimant's memory, judgment, psychomotor activity, speech, and thought processes were all normal. (Tr. at 23.) Although testing demonstrated borderline intellectual functioning, Dr. Hamm estimated average intelligence based on Claimant's fund of information and verbal skills. (Tr. at 22-23.) Thus, the ALJ determined that the evidence did not "establish a mental impairment that [was] more than a slight abnormality or that impose[d] more than a minimal effect on the claimant's functional capabilities." (Tr. at 23.) The ALJ considered Claimant's vocational profile and found that, based upon the Medical-Vocational Guidelines ("the grids"), specifically, Rule 201.21, there were jobs, existing in significant numbers in the national economy, which the Claimant was able to perform despite his impairments. (Tr. at 26-27.)

At the fifth stage in the sequential evaluation process, after the Claimant has made a prima facie showing of a disability that prevents him from engaging in his prior work activity, the burden shifts to the Commissioner, who must show that the Claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, which job exists in the national economy. 20 C.F.R. § 404.1520(f) (2004); Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976). To answer this inquiry, the Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." Grant, 699 F.2d at 191-92; see generally 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2004). Each grid, however, only considers the strength or "exertional" component of a claimant's disability in determining whether jobs exist that claimant could perform in light of the vocational factors. Grant,

699 F.2d at 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2004).

The Regulations describe both exertional and nonexertional limitations. An exertional limitation is one which manifests itself by limitations in meeting the strength requirements of a job. See 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, § 200.00(e) (2004); Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983). A nonexertional limitation is a limitation that is present regardless of whether the claimant is attempting to perform the physical requirements of a job, and would include mental retardation, mental illness, blindness, deafness, or alcoholism. Id. Nonexertional limitations are "present at all times in a claimant's life, whether during exertion or rest." Gory, 712 F.2d at 930. "When a claimant suffers from exertional limitations and the facts of his vocational profile meet all the criteria of a particular rule in the tables of Appendix 2, that rule directs the conclusion to be drawn [whether the claimant is disabled or not disabled]." Id. When a claimant has both exertional and nonexertional limitations, the grids' rules are not conclusive, and may only serve as guidelines for decision. See Gory, 712 F.2d at 931; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, § 200.00(e)(2) (2004). In a case where the claimant has only exertional impairments, the grids may be applied and vocational expert testimony is not required. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990).

Social Security Ruling ("SSR") 83-14 deals with using the Medical-Vocational Guidelines as a framework for evaluating a combination of exertional and nonexertional impairments. 1983 WL 31254. SSR 83-14 states that "[n]onexertional impairments may or may not significantly narrow the range of work a person can do." Id. at *1. "After it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work . . . a further decision may be required as to how much of this potential occupational base remains, considering certain nonexertional limitations which the person may also have." Id. at *2. The Ruling provides that use

7

of a vocational resource, such as the Dictionary of Occupational Titles or census reports "may be helpful in the evaluation of what appear to be 'obvious' cases." Id. at *4. In more complex situations, the use of such a source may be "necessary." Id. The Ruling describes more "obvious" situations as those in which the exertional or nonexertional limitations have either very little effect on the remaining range of work such that the person comes very close to meeting a rule directing a conclusion of "not disabled," or, when the limitations have such an effect that they substantially reduce the range of work to the extent that the person comes very close to meeting a rule directing a conclusion of "disabled." SSR 83-14, *3.

SSR 83-14 states that certain nonexertional limitations, such as the inability to climb ropes, poles and scaffolding has "very little or no effect on the unskilled light occupational base." Id. at *5. The Ruling states that "relatively few jobs in the national economy require ascending or descending ladders and scaffolding." Id. at *2. Similarly, environmental restrictions likewise have no significant effect on the potential unskilled light occupational base. Id. at *5. In Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit held that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker, 889 F.2d at 49. "The proper inquiry under Grant is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." Id.

The grid rules reflect the number of unskilled jobs at the various exertional levels. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(b) (2004) ("[t]he existence of jobs in the national economy is reflected in the 'Decisions" shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels."). "Thus, when all factors coincide with the criteria of a rule, the existence

8

of such jobs is established." Id. Social Security Ruling ("SSR") 85-15 further provides as follows with regard to mental impairments:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, 1985 WL 56857, *4.

As previously noted, the ALJ in the instant case found that based upon a totality of the evidence regarding Claimant's mental issues, Claimant's ability to perform the mental tasks of unskilled work was not significantly reduced. (Tr. at 24.) He found that his mental impairments were only slight and had improved with treatment. (Tr. at 22-23.) The ALJ based this finding in part upon the conclusions of Claimant's treating psychologist Rhonda L. Hamm, M.S., D.O., and progress notes from Willow Ridge, in addition to a psychological evaluation performed by William Brezinski, M.A. (Tr. at 21-23.) Dr. Brezinksi noted that Claimant reported a "significant effect to treatment" only recently begun. (Tr. at 22.)

Concerning Claimant's physical impairments, although Claimant underwent a total knee replacement, the ALJ noted that a follow-up exam and x-rays demonstrated good active range of motion and that the prosthesis remained in good position. (Tr. at 25.) The ALJ further noted that while an MRI demonstrated stenosis of the cervical spine and a disc protrusion, he presented on exam with a full range of motion without restriction and without tenderness. (Tr. at 25.) Finally, with respect to Claimant's diagnosed carpal tunnel syndrome, the ALJ noted that the evidence of record reflected no functional limitations. (Tr. at 25.) The ALJ noted that on exam, Claimant had a 5/5 grip strength bilaterally. (Tr. at 25.) Furthermore, Claimant testified that he engages in activities such as

9

assembling models and taking pottery classes, which require bilateral manual dexterity.[1] (Tr. at 25.)

According to SSR 85-15, Claimant therefore has the ability to meet the basic mental and physical demands of unskilled work, as the ALJ found. The potential occupational base is therefore not severely limited because there is no "substantial" loss of ability in these areas. The ALJ thus found that Claimant could perform the full range of unskilled work in the national economy, within the sedentary exertional ranges. Thus, the ALJ found that Claimant had no nonexertional limitations. (Tr. at 26.)

The ALJ properly found Claimant "not disabled" using Rule 201.21 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.21 (2004) as a framework for decision. Rule 201.21 provides that a younger individual (age 45-49), with a high school graduate

---

[1] The undersigned notes that the ALJ referenced in his decision two Physical Residual Functional Capacity Assessments, which were completed at the initial and reconsideration levels of the administrative review process by State agency medical consultants. (Tr. at 20.) The first was completed in February, 2002, by Dr. J. Andriole, D.O., who found that Claimant had no nonexertional limitations. (Tr. at 165-67.) Dr. Andriole found, however, that Claimant was exertionally limited to lifting 50 pounds occasionally and 25 pounds frequently; standing, walking, or sitting about six hours in an eight-hour workday; and was unlimited in pushing or carrying. (Tr. at 164.) Based on Dr. Andriole's assessment, Claimant could perform work at the medium level of exertion. (Tr. at 20.) The second assessment was completed on June 18, 2002, by Dr. David Guttman, M.D., who similarly determined that Claimant was exertionally limited to lifting 20 pounds occasionally and 10 pounds frequently, and standing, walking, or sitting about six hours in an eight-hour workday. (Tr. at 172.) Dr. Guttman however, determined that Claimant's pushing and pulling abilities were limited in his lower extremities. (Tr. at 172.) Furthermore, Dr. Guttman determined that Claimant had postural and manipulative limitations in that he should never climb a ladder, rope, or scaffolds and was occasionally limited in reaching all directions. (Tr. at 173-74.) Based on Dr. Guttman's assessment, Claimant was able to perform work at the light level of exertion. (Tr. at 20.) Notwithstanding these assessments, the ALJ reduced Claimant's residual functional capacity "to work at the sedentary level of exertion based on the combined effects of his impairments which could reasonably be expected to impose functional limitations in activities such as lifting/carrying and standing/walking that would restrict him to sedentary work." (Tr. at 25.) However, the ALJ apparently determined that the state agency medical consultants' assessments were inconsistent with Claimant's testimony and the results of follow-up examinations, which demonstrated that Claimant had no nonexertional limitations. (Tr. at 25-26.)

or more educational level, whose previous work experience was skilled or semiskilled - not transferable, and who is capable of performing sedentary work, is deemed not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.21 (2004). As Claimant's vocational profile met this Rule, the ALJ properly used it. Claimant was 48 years old at the time of the administrative hearing; he had a tenth grade education and a Generalized Equivalency Diploma, could read and write English, and perform basic math skills; his past work was skilled or semiskilled; and he was found capable of performing sedentary work. (Tr. at 588-89.)

The ALJ explained that notwithstanding Claimant's diagnoses, his "allegations regarding his symptoms and limitations are more limited and restricted than is established by the medical evidence, his own contemporaneous statements to treating sources, and medical source opinions." (Tr. at 24.) Thus, his alleged nonexertional limitations to simple, repetitive work tasks would not prevent Claimant from performing unskilled work. The use of a vocational source may have been helpful, but was not required.

Utilization of the grids in such situations was upheld in Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984) (per curiam) ("not every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment.' The proper inquiry under Grant is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.") There is no evidence that Claimant's alleged nonexertional limitations significantly reduced Claimant's ability to perform unskilled sedentary work. The reliance upon Rule 201.21 established that there were a significant number of jobs existing in the national economy which Claimant could perform.

Based upon the foregoing, it is therefore respectfully recommended that the District Court find that the ALJ's finding that Claimant had no nonexertional impairments and decision to rely upon

the grids as a framework for decision was proper and in accordance with the applicable law and regulations, and that the ALJ's resulting conclusion that there were jobs, existing in significant numbers in the national economy, which Claimant was able to perform is proper and supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: February 15, 2006.

                                            R. Clarke VanDervort
                                            United States Magistrate Judge